### *Hopkins vs. Chambers &c.*

Same case on its merits.

*Executions.    Replevin bonds.    Limitations.    Errors.
Costs.*

Judge OWSLEY, delivered the Opinion of the Court.

On the 30th of May 1820, there issued from the office of the Jefferson circuit court, a *fieri facias* in favor of Hopkins, &c. against the estate of Chambers &c. for three thousand eight hundred and thirty one dollars and thirty one cents, besides interest and cost, directed to the sheriff of Jefferson county, returnable to the 12th of August, 1820. Upon this execution is the following endorsement: "Note, that either notes on the Bank of Kentucky or its branches, will be accepted in discharge of the whole of this execution." (Signed) Worden Pope, Clk."

*May 5.*

*Fieri facias.*

The sheriff to whom the execution was delivered, levied it upon a tract of three hundred acres of land belonging to Campbell, one of the defendants therein named, and made a return thereon, that the land was not sold, for want of time to advertise according to law.

Sheriff's return.

On the 6th of September 1820, there issued a *venditioni exponas* to the sheriff, commanding him to expose the land upon which the *fi. fa.* had been levied, to sale &c.

*Ven. ex.* endorsed for bank notes.

This execution was also endorsed, "that notes on the bank of Kentucky or its branches will be taken in discharge thereof, (Signed) Worden Pope Clk." And it was also returned by the sheriff, "the property within named not sold, for want of bidders."

On the 29th of December 1820, another *venditioni exponas*, with like directions to the sheriff, issued from the same office, and upon which is the like endorsement as to bank paper. But there is also on this execution the following memorandum: "the sheriff, in the collection of this execution, will cause the same to be replevied two years, or the time prescribed by law, being unwilling to take Kentucky Bank notes in payment, (Signed) Wm. C. Barker & Co. Dec. 29, 1820."

Second *ven. ex.* endorsed by the clerk, that bank notes should be received, but by plaintiff that bank notes would not be taken.

2 H

HOPKINS
vs.
CHAMBERS.
—————
Sheriff's re-
turn roplev-
ied for two
years.

The sheriff's return upon this execution is in the following words: "Came to hand January 15th, 1821, and replevied; Levi Tyler security in the replevin bond, as per bond herewith will shew.

The replevy bond is dated the 15th of January, 1821, purports to be regularly executed by the defendants in the execution, with Tyler their security; and was payable within twenty four months from its date.

Fieri facias
on replevin
bond.

On the 14th of February 1823, there issued on this replevy bond a *fieri facias*, in favor of Barker and Hopkins, against the obligors named in the bond. The sheriff to whom it was directed levied the execution on several tracts of land, some of which were sold, and as to the residue, he returned that it *was not sold for the want of bidders.*

After this, several other successive executions, issued on the same replevy bond, each of which was levied on different property, but none of which was sold by the sheriff.

Motion to
quash replev-
in bond, and
executions
issued there-
on.

The obligors in the replevy bond and defendants in the executions which thereafter issued, at the March term 1824, of the Jefferson circuit court, in pursuance to notice given by them to Barker and Hopkins, moved the court, for reasons mentioned in the notice, to quash each and every execution which had issued, together with the replevy bond.

Judgment of
the circuit
court.

The trial of the motion was removed to the circuit court of Oldham, and judgment there rendered, quashing the replevy bond, and each of the executions which issued thereon.

To reverse that judgment, this writ of error is prosecuted by Hopkins, survivor of Barker and Hopkins.

Grounds for
the motion
stated in the
notice.

The only objection taken in the notice to the replevy bond is, that it is in violation of those provisions of the constitution of the United States and of this State, which forbid the Legislature passing any law which impairs the obligation of contracts, and that the bond is therefore inoperative and void. Aware however that this *objection could not ac-*

cording to the settled doctrine of this court, avail
their clients who gave the bond, the counsel for the
defendants in error made no effort in argument to
sustain the judgment on the ground of any suppos-
ed violation of the constitution, either of this state
or the United States.

HOPKINS
vs.
CHAMBERS.

But it was contended by them, that after the
plaintiffs in error, in whose favor the *fieri facias* is-
sued on the 30th of May 1820, had endorsed the
same, that notes on the bank of Kentucky, would
be accepted in discharge thereof, and after that exe-
cution had been levied upon the estate of the defen-
dants in the execution, they were not at liberty to
withdraw the endorsement, but that it was incum-
bent upon the clerk to continue the endorsement up-
on the executions which thereafter issued in favor
of the plaintiffs, and as the endorsement was in
fact continued by the clerk upon each *venditioni
exponas*, it was urged by the counsel for the defend-
ants, that instead of obeying the directions given by
the plaintiffs on the latter one, to cause the debt to
be replevied two years, the sheriff in taking the re-
plevin bond, should have made it conform to the act
of assembly then in force, which required replevin
bonds taken under executions endorsed for bank pa-
per to be made payable within one year only, and
hence it was insisted, that the bond as taken for
twenty four months, is in violation of the law under
which the sheriff acted, and was therefore correctly
overturned and set aside by the judgment of the
circuit court.

Grounds re-
lied on in the
argument
here.

Were it even admitted, that in reversing a judg-
ment quashing a replevin bond, it would in the gen-
eral be competent to travel out of the objection to
the bond relied on in the notice, and hunt out any
other objections which may exist on the face of the
procedings under which the bond was taken, the ob-
jections so sought after, must undoubtedly be such
as would have authorized the court of original ju-
risdiction to render the judgment complained of.
Before the objections which were taken in argument
to the bond are examined, therefore, it would seem
to follow, that we should inquire whether or not if

Query, whe-
ther objec-
tions to a re-
plevin bond,
apparent in
the record,
but different
from the
grounds spe-
cified in the
notice to
quash, may
be relied on
here.

HOPKINS
vs.
CHAMBERS.

they had been urged in the court below on the trial of the motion, they could have been regarded by that court.

Motion to quash a faulty replevin bond must be made at the term next succeeding the return day of the first execution issued on it.

This enquiry, though a necessary one, is attended with no difficulty. There is nothing in the nature of the objections which would have prevented an examination of them by the circuit court, if they had been taken by the defendants in due time; but if there be any thing in the objections, they only go to render the replevy bond a *faulty* one, and the motion of the defendants in that court came too late to quash a bond of that sort. The motion was not made to the first court after the first execution issued on the replevin bond, and unless made at that term of the court the act of assembly regulating such motions, expressly forbids the motion to be made afterwards, 2 Dig. 1258.

Were we therefore to concede to the defendants, that in taking the replevin bond for twenty four months, instead of one year, the sheriff acted out of the pale of his official duty, and that the bond is consequently faulty, still as *the motion to quash* was not made in proper time, the court below could not, for that irregularity, have correctly quashed the bond, nor can this court, for that cause, sustain the judgment which went to quash the bond.

But the judgment did not stop at quashing the bond, it went further and quashed each of the executions which issued thereon; and the object of the present writ of error is to reverse the judgment, quashing the executions, as well as that quashing the bond. The next question therefore is as to the correctness of the judgment in respect to the executions.

Assuming the bond to be a valid statutary replevin bond, there is no possible ground upon which the judgment as to the first execution that issued thereon can be sustained. That execution is in due form, and in every particular, conforms to the requisitions of the law under which it was issued.

Bond taken by the proper

But it may be contended that, if in taking the bond for twenty four months, instead of two years,

the sheriff acted in violation of law, the bond, though not quashable in consequence of the lapse of time, is not entitled to the force of a statutory replevin bond, so as to authorize an execution to issue thereon; and it may be urged that, the first execution is therefore unsupported by any judgment or bond having the force of a judgment, and was correctly set aside by the judgment of the circuit court.

The argument is certainly specious, and would carry with it great force, provided the bond bore upon its face the stamp of one not authorized to be taken by law. But such is not its character. By the provisions of the act of assembly of the 11th of February 1820, under which the sheriff must have acted, in taking the bond, there is a class of cases in which the sheriff is directed to take a replevy bond for two years, so that *prima facia* the bond upon its face is not without the authority of law, and until quashed or set aside, must be treated and acted on as a valid statutory bond. It would indeed be strange if such were not the case. Whether, when taken by the sheriff, a bond has the force of a judgment, has never been supposed to depend upon critical exactness. Though inaccuracies of the most palpable sort, be committed by the officer, and the bond be taken either for too much, or too little, its force and efficacy as a statutory replevin bond has nevertheless, always been understood to be the same, as if no error existed in the bond. It is to replevy bonds, that the law communicates the force of judgments, and it must be to the bond, and not to the conduct of the officer in taking it, that we should have recourse in ascertaining its efficacy. If it contains the characteristic stipulations of a replevin bond, and be payable at the time prescribed by law, for any description of replevy bonds to be made payable, though in taking it the officer may have erred in calculating the amount, or may have acted incorrectly in other respects, the bond is emphatically a replevin bond, and until quashed or set aside, must have ascribed to it the force of a judgment. Such we think must be the force of the bond in question. True, it is payable in twenty four months, and not in express terms, two years, but in common parlance,

HOPKINS
vs.
CHAMBERS.

officer, and having the characteristics of a replevin bond, payable at a period prescribed by law, for such bonds in any case, is a valid judgment bond till quashed, however palpably erroneous it may be in amount, or other respects.

HOPKINS
vs.
CHAMBERS.

"Twenty-four months" in the time of the payment of a replevin bond is equivalent to the two years directed by the statute.

months are understood to be calendar months, and the expressions in the bond must be so construed.

Possessing, therefore, as it must be understood to do, the force of a judgment, the clerk did right in issuing the execution upon the bond; and as by the lapse of time no objection could, when this motion was made, be successfully urged against the bond; its force as a judgment must now be conclusive against any attempt to set aside the first execution on the ground of the bond being faulty.

Whether or not the objection which has been urged to the bond, could have availed the defendants to set it aside, if it had been made in due time, we have not thought it necessary to decide, because even if it could, the result as to this contest would be precisely the same.

Where a *fieri facias* has been levied on land, and returned without a sale, no other *fieri facias* can issue on a judgment till that land has been sold or released.

With respect to all the other executions which issued after the return of the first that issued on the replevin bond, we concur in the opinion of the circuit court, quashing them. The first execution on the bond was levied upon a tract of land which does not appear ever to have been sold, or released from the execution, and of course no other execution could regularly thereafter issue to take other estate of the defendants, whilst the land seized under the first, remained undisposed of, and subject to that execution.

Judgment reversed in part, and affirmed in part.

The judgment quashing the replevy bond, and the first execution which issued thereon, must therefore be reversed, and the residue of the judgment as to the other executions must be affirmed.

Costs.

The plaintiffs in error must recover cost in this court.

*Denny* for plaintiffs; *Haggin* and *Monroe* for defendants.